Thank you, Judge, and may it please the Court, James Kuhn, on behalf of the plaintiff, I'd like to reserve two minutes of my time for rebuttal. The question in this case is whether a federal court on de novo judicial review of a denial by an ERISA plan can rely on issues never articulated by the plan in its original decisions. What does it matter if it's de novo review? I think de novo review means review on a closed record subject to the Mongalozo exception. Well, I didn't think that he reopened the record. I thought he just articulated different reasons. Just like when we do a de novo review of a summary judgment, we don't take in more affidavits and depositions. We look over the affidavits and depositions the district judge did, and we may articulate the reasons for our decision differently. I think you may articulate the reasons differently, but I don't think you search, for example, if it were a contract case. I don't think you would go off and find a provision in the contract that the parties had never discussed, as to which they had never argued the evidence, and say, well, we could make this decision on this basis over here. We might give them a chance for supplemental briefs. We might not, depending. I think you would. Well, is there anything in the record here that was different from what was originally in the record? Is it the same record that was used on the de novo review? I'm sorry. The record in this case did not change at any stage. That's correct. It became closed after the final decision by the administrator and was not changed or added to. We might have tried to add to it had we known that a different standard, for example, the anti-reasonable occupation standard, was going to be used. You were given a chance to add evidence to the record, were you not? We had the chance implied by Mangaluzzo. There was no explicit invitation to add to the record once it got to the trial court. Certainly, we could have added at any stage below, before the administrator. We could have put in, theoretically, any kind of evidence. But at that time, the decision was you can go back to your original job as a machine tool computer programmer. I don't actually get the legal part of your argument. There is a doctrine in insurance law that when an insurance company denies coverage on one ground, and one ground only, it can't later say there's no coverage on some different ground that it didn't use in its original denial. Some states follow that doctrine. But this is not insurance law. And I have not noticed a case that stands for the proposition you want. Is there one? Well, the two cases that come closest, and I can't say that there's a case on all fours that says you can't do this, are Vizcaino and Jabian. The difference with Vizcaino is it is deferential review, not de novo review. And so there's a distinction. However, the court's statements, I think, in that case, reveal something about the point of having statutory and regulatory reasons given. And why does the statute require that reasons be given by the client administrator? Why do the regulations require that? What use is that if those reasons can be ignored on judicial review and something the parties never argued at all? It's Vizcaino, but it's deprecates when you do not do de novo review. What's the other one? Jabian. Jabian is, again, it's nowhere near on all fours. There the court held the real issue was should we give deferential review where the plan provides for deferential review, but the second level of review never occurred because the plan didn't get it done. And the court there holds, well, no, we're going to apply de novo review. We're not going to defer to something that never happened. That's the central holding. But in the course of saying that, the court says we're not going to allow claimants to be sandbagged by new reasons given on review. And it cites the Cineri case, which, of course, is a deferential case. But the issue about new reasons on review is designed, as I read that case, to be a limitation on the insurer-slash-employer, not a limitation on the court. In other words, there's an attempt to control the behavior of the ERISA plan, and so that it, like the insurer in Judge Kleinfeld's example, can't dance around and decide new things. But that rationale doesn't really exist at the level of the court reviewing the whole record, where it was you who asked for de novo review and not simply a look at the reasons that had been given. Well, again, when we asked for de novo review, what we asked for was a reweighing of the evidence on the reasons that had been given. That's what we thought it meant, and I suppose what we're talking about is what does de novo mean. But I think when the court comes up with its own reasons, all of the same policy rationales apply. Why do we want to deter plans from coming up with new reasons? It's not an abstract question. This was a case where the magistrate judge first decided and came up with the reason that he couldn't do any job, that he could do some job, and so therefore, because after the two-year original period had run, that's the test, whether he could do any job. Any reasonable arbitration. Right, but the two-year period, and this confused me a little, actually had run by the time the plan had denied him benefits. If it runs from the time of his alleged disability, it would be a month over two years. If it runs from the time that they gave him disability, it would probably be about 18 months, correct? Right, it had run during the process, that's right. So when they originally decided it, they decided it under the first two-year provision, correct? Your occupation, yes. Right. Now, when the magistrate judge decided this, did you have any clue before the report and recommendation came out that he was going to rely on this provision? The only clue we had was that in its surreply, not in its answer, not in its opening brief, in its surreply, the plan said, oh, by the way, the reasonable occupation standard could apply here. So then the magistrate judge issues the report and recommendation. You have the ability to object to the district judge. Did you object on the grounds that, well, if that's the standard, we have evidence that he can't do any occupation? No. We objected on the ground that legally he should not have relied on a new reason. We also moved to strike that part of the argument. But you didn't say we want to then reopen to show that he can't do any job. That's right. We did not say that. That's true. Let me ask you this. Going back to the issue concerning whether he could do his own job, he wasn't taking anything more than over-the-counter medication, correct? That's what the record says. Right. And he had stopped seeing the doctor for about a year. There's no evidence that he saw him again. That's right. And he could ride a horse. Sometimes, yes. As his doctor explained, he could do things sometimes but not others, which is fairly common. But, I mean, when he could ride a horse, he could get on a horse. That seems to be the hardest part of riding a horse. Well, he depends. So not horse riding. And he took care of animals, right? He had some animals at his place. That's right. What kind of animals? I don't think the record says what they were. It's not like we're talking herding cattle here. I didn't notice what kind of animals. And I was kind of curious because we have animals and the dog food comes in much heavier bags than the cat food, that kind of thing. What kind of animals? I don't know, and there's no record. The record just doesn't say? The record doesn't say what kind of animals or whether he lived with the dog or he's married. It sounds like big animals. I don't think the record says how big these animals are. Animals that eat a lot and follow a lot of shoveling. Does he own the horses? Again, I don't think the record says whether he owns the horses, whether it's he or his wife that does most of the caretaking, or how often he does it. Those things happen occasionally. But if he's not taking anything more than aspirin or Excedrin or one of those types of things and he's not seeing the doctor anymore, and there was something about that his pain had improved about 80 percent and he can ride a horse every once in a while, why can't he do his computer manufacturing job? Well, because even the medical opinion from the plans doctor said he can do sedentary work. And this is not a sedentary job. The only evidence about this job is that it requires lifting up to 25 pounds on a regular basis. He's a programmer, isn't he? It's a machine tool computer programmer job. You do some programming, you go over to what's called prove out, and you stand and you watch what the machine is doing and you make adjustments. So it's sort of a light machinist computer programming job. The only evidence is the evidence that he put in about how much he had to lift, et cetera, in that job. We could have. There could be other evidence as to what's a reasonable occupation and what you could do. Before the time runs out, I'll ask you one more thing that was on my mind. The argument that you make, the core of it is really that it's unfair to sandbag a fellow with new reasons. That's right. I can't figure out why he was sandbagged. Everybody knows, including him, that the two-year provision is there. For the first two years, you just have to be disabled from doing your old work. After that, disabled from anything in order to continue the disability. And the evidence is all there. The horses, the videotape of him taking his garbage, the tractor. So all the evidence is there. The policy is there. The two-year provision is not obscure. It's flashing a yellow light at everybody all the time. I can't see the sandbagging. What's the surprise? The surprise is I think we're entitled to say, well, why have they denied us? Tell us. They have to tell us by statute and regulation why they have denied us. The reason for that is so that we can rely on that and focus on that. The provision changes in two years. It might have changed if they had said it. The policy changes in two years. It says for two years X, after that Y. And if they had said that, then we could have litigated that issue. They never said it. It's certainly not fair to construe their decisions as saying that. Another way of saying that, though, is that at the close of the two-year period, what prejudice is there to your client? The prejudice to my client is to be able to know that this is now in play in litigation and that we have to go and get some evidence as to what's reasonable, what's a reasonable occupation for him. Nobody's litigated that issue at all. That's not an open and shut question. You have to look at his training, his experience, his age. He's 63 years old. He has severe spinal problems. And this is not a low-back strain kind of issue. But in light of the magistrate judge's ruling, you didn't ask the district court for an opportunity to offer such evidence when you knew that this was the whole ball of wax, then? We didn't know it was the whole ball of wax. At the time you got the report and recommendation, you did. By the time we got the findings and recommendations, that's right, we did not ask to reopen the case under Mongo Luzo. That's right. Thank you, counsel. Thank you. May it please the Court, Tom Sondag on behalf of the defendant plan. We raised a number of points in our brief, both legal and factual. I think today I would like to spend my time just talking about the law and the narrow issue that plaintiff is raising. Don't leave anything. It's in the briefs. It's preserved. Thank you. One of his arguments, since we're talking about the law, is that it has to be a decision of the plan. And what he's saying is this isn't a decision of the plan, that this is a decision of the court. The plan made the decision to deny benefits on the grounds that there wasn't proof that he could do his normal job or another reasonable job like his normal job. So why isn't there some force to his argument that there's never a planned decision saying that he can't do any reasonable job? Well, I think there would be some force to his argument, perhaps, if it was an abuse of discretion standard that the district court was applying when it reviewed that decision, but it wasn't. It was a de novo proceeding, and this court has explained what a de novo proceeding in the ERISA context means. It's a new and extended look at that case. What is your best case citation for the proposition that de novo review means what you say and not what Mr. Coombs says? Well, as to what de novo review means, I think we've cited the Thomas case in our brief, and I believe that that addresses the scope of de novo review. I think the Kearney case, which we did not cite in our brief, which was an earlier case cited by Thomas, discusses, I think, one of the first cases by this court discussing de novo review and what it means. But as far as the specific issue that counsel is raising today as to whether the district court can or cannot consider new issues, I guess I would cite the same cases that counsel discussed today, Viscano and Jebian. I believe when you read those cases, they actually support the proposition. Clearly, Viscano does. Viscano held that the administrator could raise an issue that had not been raised before the district court proceedings. What Viscano said was because the plan granted the plan administrator discretion, this court was not going to look at the issue itself, and it remanded it to the administrator to take a fresh look at it. But here, where it's de novo review, the result in Viscano is that the district court can look at an issue that the plan administrator had not previously raised. I think Viscano, which is an unbanked decision of this court, expressly holds that. In fact, in plaintiff's brief, they're relying on the dissent, which expressly took issue with that proposition in Viscano. In addition, the Jebian case, I think, supports our position, although it takes a little more closer reading of that case. Again, that was a standard of review case, and the court held that abuse of discretion applied, and it applied because the administrator did not act on an appeal within a specific time. Let me give you a hypothetical. Say there are two situations. They deny him benefits on the grounds here, and the district judge, magistrate judge, and the district judge on review say, look, the administrator in the plan relied on A, B, and C, doctors A, B, and C. We don't find A, B, and C credible, but we're looking at the rest of the record. We see D, E, and F, and we find them credible, same result. No question there that that's the no vote review, right? Sure. Now, say, though, that the district judge and magistrate judge are looking through this, and they deny benefits on the ground that he didn't meet the standard, and going through it, one of the judges says, you know what, he never paid his premium, and so what we're going to do is we're just going to deny his claim on the grounds that he never paid his premium. Does that seem fair? Then he has no opportunity to deal with that. Well, if there's a question of fairness here, and there isn't on this record, I think that the plaintiff could always raise the issue, hey, wait a minute, I've been sandbagged, so to speak. I want to present some evidence on that. But as to whether the district court can do that, I say certainly. The court is interpreting this plan de novo. It cannot turn a blind eye to the provisions of the agreement. And I submit that there's nothing in this court's cases or other cases of other jurisdictions that support the proposition that a court could not indeed consider a new issue such as you proposed. What would be the result had opposing counsel requested an opportunity to bring fresh evidence to bear on the new provision? Well, the issue would have been committed to the discretion of the district court as to whether new evidence was appropriate or not. I would submit in this case, as you look at the record, plaintiff himself admitted in his reply brief that there was no additional medical evidence. And so I think on this record you're left to scratch your head as to what plaintiff could have done if indeed he believed he was being sandbagged. And we've also made an argument as to why this is really a lot of commotion about nothing, because the standard of his occupation as compared to any occupation were virtually the same. But he could have raised the issue, and they often are raised in these cases, a request for discovery and to introduce new evidence. So in Judge Moskowitz's example, he could have put in an affidavit attaching canceled checks for his premiums and said the record isn't complete because this wasn't an issue and it would be unfair, etc., etc. That would be the procedural posture in your view? Correct. And in Judge Moskowitz's example, it would almost certainly be an abuse of discretion not to let him put in the canceled checks. Correct. I mean, Mangaluzzo would, I think, clearly entitle a plaintiff in a situation where the plaintiff can come in and say, hey, wait a minute, we were over here and now you're over here, it's only fair that you consider this evidence. I think that would be an abuse of discretion if they had such evidence. Your argument is really de novo review is review of the larger issue based on the record or any supplementation, that is, is he entitled to benefits, not is he entitled to benefits because of reason A. Correct. And their argument is it's de novo review of is he entitled to benefits as to reason A. Correct. My understanding of a de novo review in an ERISA case is it's not consistent with plaintiff's position. And as the Court has been noting, the ability to raise new evidence, I think, is not consistent with the narrow review that plaintiffs propose. It seems to boil down to not what de novo review is but what the issue is that's being reviewed de novo. Correct. And I think, though, that I would agree with your summary of what we believe de novo review is. The larger, the ultimate issue. Correct. I guess another way of putting it would be on abuse of discretion review, you asked did the plan administrator abuse his discretion when he concluded that reason A precluded coverage. And on de novo review, you just don't care what the administrator thought. You say is he entitled to benefits. Correct. And, indeed, that was going to be the point I would make about Jevian. In Jevian, that's what this Court said. It said we're not going to defer to an after-the-fact justification. Okay? The administrator didn't act within the time, and the Court held that the claim was, therefore, deemed denied. They said you didn't exercise your discretion, so we're not going to defer to your after-the-fact justification. That was the issue of sandbagging there. But when they sent the case back, as they did in Jevian to the District Court, they made clear that it was going to be de novo review, and it was going to be a determination of whether the person was entitled to benefits or not. Since the letter they sent out includes quotes from the plan that it talks about for the first 24 months, and after that what the different standards are, why didn't the plan go on the standard at any occupation rather than his own occupation? I wish I could explain that. I think you have touched on a potential reason for that. The examination was being conducted before the two-year period had concluded, and when they finally issued the decision, it was in August of 2002, just after the 24-month had expired. It's purely speculation on my part, though, as to why they did not refer to the any-occupation standard, which was, as Judge Kleinfeld says there in bright yellow lights on the first page. Could Mr. Teplick go back now and say, look, here's my evidence that I can't do any job to the plan? I think we're at a different point now. We are on review in this court. Mr. Teplick had the opportunity in the District Court. As we say, if you're simply examining the District Court's decision here, it's not de novo review. It would be a decision as to whether the court clearly heard. But under the plan, at the point he leaves, he gets disability. If he's disabled, gets better, and then becomes disabled again, he's not covered by the plan? I suppose that would be a new issue, and I couldn't comment on that. His horses, does the record show anything about that? I would agree with counsel that the record is unclear as to the reference to animals and what they are that he cares for. It does say that he rides his horses, and so there are horses there, but what the other animals are. I'm thinking that if I go to some park and there are concessionaires outside the park that have horses that I ride, I don't have to do any shoveling. If they're my horses, I do. My understanding of the record is that they are his horses, yes. Thank you, counsel. Thank you. We ran through all the time, and if you want to take 30 seconds for rebuttal, go ahead. Thank you, Your Honor. I would just say that even in a brand-new trial on a contract case, for example, a jury or a court would not have a roving commission to look through the contract, for example, and say, gee, here's an issue over here when the parties had not raised it. In a civil case, there would be pleadings. In this case, we have a statutory and regulatory requirement that reasons be given, and those reasons should mean something, and if the defendant prevails, they don't. Thank you, counsel. Thank you. Tepler v. Bowen, 90 minutes.
judges: Kleinfeld, Graber, Moskowitz